IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Great American Alliance Insurance Company, | ) ) ) | |
| Plaintiff, | ) ) | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| vs. | ) ) ) | |
| WHR Social Club, Inc. DBA Lavish Lounge, Carlos Antonio Quiroga, Rommie Khalil, Reginal Campbell, Tasha Kotz as Special Administrator of the Estate of Mykala Bell, JyQuavious Young, DeAundre Jacquez Goldsmith, Krystal Williams and Laporshe Hudson, | ) ) ) ) ) ) ) ) | C.A. No. _____

**(Non-Jury)** |
| Defendants. | ) ) | |

The plaintiff, Great American Alliance Insurance Company ("GAIC"), by and through its undersigned counsel, complaining of the above-named defendants, respectfully alleges and would show unto the court as follows:

## NATURE OF ACTION

1.     This action is brought pursuant to the provisions of the Uniform Declaratory Judgment Act as codified in 28 U.S.C. § 2201.

## PARTIES

2.     GAIC is an insurance company organized and existing under the laws of the State of Ohio with its principal place of business in Ohio.  GAIC issues insurance policies in South Carolina and insures property and interests located within South Carolina.

3.     Upon information and belief, WHR Social Club, Inc. DBA Lavish Lounge ("Lavish Lounge") is a nonprofit corporation organized and existing under the laws of the State of South Carolina with its principal place of business in Greenville County, South Carolina.

4.     Upon information and belief, Carlos Antonio Quiroga ("Quiroga") is an owner of Lavish Lounge and is a citizen and resident of South Carolina.

5.     Upon information and belief, Reginal Campbell ("Campbell") is an owner of Lavish Lounge and is a citizen and resident of South Carolina.

6.     Upon information and belief, Rommie Khalil ("Kahlil") is the owner of the property and building located at 1701 White Horse Road in Greenville, South Carolina, where Lavish Lounge is located, and is a citizen and resident of Greenville County, South Carolina.

7.     Upon information and belief, Tasha Kotz is the appointed Special Administrator for the Estate of Mykala Bell ("Kotz"), and is a citizen and resident of South Carolina. Upon information and belief, Mykala Bell, the decedent, was present at Lavish Lounge the evening of July 4, 2020/morning of July 5, 2020.

8.     Upon information and belief, JyQuavious Young ("Young") is a citizen and resident of Greenville County, South Carolina and was present at Lavish Lounge the evening of July 4, 2020/morning of July 5, 2020.

9.     Upon information and belief, DeAundre Jacquez Goldsmith ("Goldsmith") is a citizen and resident of Greenville County, South Carolina and was present at Lavish Lounge the evening of July 4, 2020/morning of July 5, 2020.

10.    Upon information and belief, Krystal Williams is a citizen and resident of South Carolina and was present at Lavish Lounge the evening of July 4, 2020/morning of July 5, 2020.

11.    Upon information and belief, Laporshe Hudson is a citizen and resident of South Carolina and was present at Lavish Lounge the evening of July 4, 2020/morning of July 5, 2020.

12.    The insurance policy at issue was issued and delivered to Lavish Lounge in Greenville County, South Carolina.

13.     GAIC is informed and believes that jurisdiction is proper in this Court in that there is a diversity of citizenship between the parties as GAIC is an insurance company incorporated in Ohio with its principal place of business in Ohio, and the defendants are citizens and residents of states other than Ohio. Therefore, this Court has jurisdiction based upon 28 U.S.C. § 1332.

14.     GAIC is further informed and believes that venue is proper pursuant to 28 U.S.C. § 1391 because one or more of the defendants reside in the district and a substantial part of the events giving rise to the claim occurred in the district.

15.     This declaratory judgment action arises out of claims made by Kotz, Young, Goldsmith, Williams and Hudson for bodily injuries sustained by them at Lavish Lounge on or about July 4-5, 2020, involving a shooting that occurred at the premises.

**Factual Allegations**

16.     On the evening of July 4, 2020/early morning of July 5, 2020, Kotz, Young, Goldsmith, Williams and Hudson were at Lavish Lounge attending a concert by rapper Foogiano. Upon information and belief, shortly before 2:00 a.m., a scuffle took place near the stage after gang signals were exchanged between some attendees at the concert. Thereafter, upon information and belief, a member of Foogiano's entourage, Jarquez Kzavion Cooper ("Cooper"), began shooting a firearm resulting in the death of Mykala Bell, and alleged injuries to Young, Goldsmith, Williams and Hudson.

17.     In August 2020, Kotz, Young and Goldsmith filed complaints in the Court of Common Pleas for Greenville County, South Carolina, C.A. Nos. 2020-CP-23-04012, 2020-CP-23-03283 and 2020-CP-23-03342, respectively (referred to as "the Kotz Lawsuit," "the Young Lawsuit," and "the Goldsmith Lawsuit" (collectively "the Underlying Lawsuits")).  The plaintiffs

have named a number of defendants in the lawsuits including WHR/Lavish Lounge, Quiroga, Khalil and others. Campbell is not named in any of the lawsuits but is, upon information and belief, an owner of WHR/Lavish Lounge. True and correct copies of the amended complaints in the Underlying Lawsuits are attached as **Exhibit A**, **Exhibit B** and **Exhibit C**.

### A.    The Kotz Lawsuit

18.    In the Kotz Lawsuit, Kotz alleges that Mykala Bell was a customer at Lavish Lounge, a nightclub, when, at approximately 2:00 a.m. on July 5, 2020, "an altercation broke out on the stage during which multiple shots were fired." (Amended Complaint, ¶¶4,5,11). Kotz further alleges that Mykala Bell "tried to escape but was unlawfully restrained. She was detained inside the club for a period of time against his [sic] will and personal liberty. [Bell] was falsely imprisoned and, as a result, was caught in the crossfire, shot, and killed." (Amended Complaint, ¶7).

19.    Kotz further alleges that WHR Social Club owned, operated controlled and managed Lavish Lounge. (Amended Complaint, ¶11).

20.    In addition, Kotz alleges that Rommie Khalil owned, operated and controlled the premises at the time of the shooting.

21.    The Kotz Lawsuit contains a single count entitled "False Imprisonment and Wrongful Death." Kotz alleges that the defendants were negligent in following particulars:

a.    Failing to provide adequate security on the premises;
b.    Knowingly subjecting invitees of the premises to an unreasonable risk of serious physical harm;
c.    failing to exercise reasonable care to provide a safe environment for invitees of the premises;
d.    Failing to provide proper and adequate surveillance of the premises;
e.    Permitting or otherwise ignoring criminal activity on the premises;
f.    Failing to properly train its employees, servants, and agents in recognizing and correcting dangerous conditions and risks to invitees of the premises;

g.   Failing to monitor the performance of its security personnel to ensure the safety of invitees on the premises;

h.   Failing to monitor the performance of its contractors hired to provide security on the premises;

i.   Failing to hire competent security personnel to ensure the safety of invitees on the premises;

j.   Failing to implement and follow security measures commensurate with the recommendations of security experts and consultants;

k.   Failing to check I.D.s at the door or entry points;

l.   Failing to conduct pat-down checks at the door or entry points;

m.   Failing to remove unauthorized personnel from the premises;

n.   Failing to adequately control a crowd of dangerous persons;

o.   Violating crowd restrictions;

p.   Failing to have adequate patrols on the premises so as to deter dangerous activity on the premises;

q.   Failing to warn invitees of the premises, including Mykala, of the risks of criminal activity on the premises;

r.   Failing to maintain a policy, procedure, or system of investigating, reporting, and warning of criminal activity on the premises;

s.   Permitting unauthorized persons to come onto the premises with weapons;

t.   Failing to restrict access to the premises on July 4-5, 2020 to only those persons who were lawfully permitted [sic] the premises.

22.   GAIC is currently defending Lavish Lounge in the Kotz Lawsuit under a full and complete reservation of rights. GAIC has denied coverage for Khalil because he is not an insured under the policy.

**B.    The Young Lawsuit**

23.   Young alleges that WHR Social Club ("WHR") is a "business, charity, nonprofit corporation, mutual benefit corporation, social club and/or alcoholic beverage sales entity" and that it operated as "Lavish Lounge." (Complaint, ¶¶4, 6). He alleges that Quiroga was doing business as WHR, that Quiroga and WHR were jointly and severally known as "Lavish Ultra Lounge," and that Quiroga is an owner, president, director, chief operator and/or controller of WHR. (Amended Complaint, ¶¶5, 17).

24.   Young further alleges that Khalil was an owner of the real estate where the incident occurred and "knew or should have known that . . . Lavish Ultra Lounge was operating

unlawfully on his premises without proper licensing, insurance, controls, safety protections, and/or permits . . . " (Amended Complaint, ¶15).

25.     Young alleges that Lavish Lounge operated as a bar and/or social club and/or nightclub, (Amended Complaint, ¶19), and that all of the defendants "combined and conspired, on or before July 4-5, 2020, to operate an illegal and criminal enterprise for purposes of avoiding payment of taxes, property taxes, income taxes, permits, licenses and other fees and obligations owed to federal, state and local governments or agencies thereof." (Amended Complaint, ¶20).

26.     Young alleges that on or about July 4-5, 2020, the defendants were engaged in selling alcoholic beverages on the premises where the concert took place and admitted customers and/or invitees who were underage. (Amended Complaint, ¶22). In addition, he contends that Cooper and others carried in, presented and discharged firearms. (Amended Complaint, ¶30).  He alleges that he was a customer and invitee of the defendants and as a result of the acts of Cooper and others in carrying in and discharging firearms and other illegal activities, was shot in the back, hip and leg, resulting in severe, permanent, and disabling injuries. (Amended Complaint, ¶32). He alleges that the defendants in the Young Lawsuit failed to provide reasonable security and failed to have a license for the service of alcohol on the premises. (Amended Complaint, ¶¶34, 35).

27.     The Young Lawsuit alleges causes of action for negligence, violation of the South Carolina Unfair Trade Practices Act, negligent discharge of a firearm (as to Cooper) and punitive damages.

28.     The negligence cause of action in the Young Lawsuit includes twenty-eight particulars of negligence, most of which focus on the failure to provide security and to maintain safe premises. (Amended Complaint, ¶¶40 and 41 and subparts). In addition, Young alleges that

the defendants in the underlying lawsuit were negligent in failing to operate a business in compliance with the Alcoholic Beverages Control Act; selling alcohol to underage persons or intoxicated persons; in the careless use of a firearm; failing to use proper care, caution and diligence in the introduction or handling of a deadly weapon into a business where there is the consumption of alcohol; failing to prevent the discharge of a firearm inside the premises; and failing to ensure that the event was properly licensed, permitted and/or accredited by Greenville County or the State of South Carolina. (Amended Complaint, ¶41, subparts a, b, k, l, o, p).

29.     GAIC is currently defending Lavish Lounge and Quiroga in the Young Lawsuit under a full and complete reservation of rights.  GAIC has denied coverage for Khalil because he is not an insured under the policy.

### C.     The Goldsmith Lawsuit

30.     The Goldsmith Lawsuit is identical to the Young Lawsuit except for the alleged injuries sustained by him. Specifically, Goldsmith alleges that he was a customer and invitee at Lavish Lounge when he was shot in the head and face. (Amended Complaint, ¶¶31, 32).

31.     GAIC is currently defending Lavish Lounge and Quiroga in the Young Lawsuit under a full and complete reservation of rights.  GAIC has denied coverage for Khalil because he is not an insured under the policy.

### D.     Claims by Williams and Hudson

31.     Williams and Hudson have not filed lawsuits but have provided notice to GAIC of potential claims. Counsel for Williams has advised that Williams was injured as a result of grossly negligent operation, supervision, negligent security measures, low lighting condition and lack of security personnel. Specific information regarding Ms. Hudson's claim has not been provided to date.

## The Policy

32.    GAIC issued a commercial general liability policy, bearing policy number PL2664771 for the policy period 1/27/2020 – 1/27/2021 ("the Policy"), to Beauty Health & Trade Alliance under a Food Liability Insurance Program.

33.    WHR/Lavish Lounge is a designated certificate holder (certificate number F085067) under the Policy. The Policy has limits of $1,000,000 per occurrence; $1,000,000 for personal and advertising injury; and a $2,000,000 general aggregate limit. The Policy does not include liquor liability coverage. WHR's/Lavish Lounge's business is described on the certificate as "bartending, concessions." A true and correct copy of the policy is attached as **Exhibit D**.

34.    In the application for the policy, Lavish Lounge represented that it was not a bar or tavern and that its operations did not go beyond 2:00 a.m. It represented, among other things, that it was not responsible for and did not offer any kind of entertainment with its service. The application expressly provides that there is no coverage for "restaurant, café, bakery, tavern, or similar establishment, with operations where you own or lease the space where customers enter to purchase food/beverages." Lavish Lounge certified that it accepted the excluded products and operations of the policy.

35.    GAIC is providing a defense to Lavish Lounge and, when named as a defendant, Quiroga.  It has denied coverage to Khalil because he was not an insured on the Policy on the date of the incident giving rise to the claims and the Underlying Lawsuits.

36.    A justiciable controversy exists between the parties in this action concerning whether coverage exists under the Policy for the damages as alleged by the claimants and by the plaintiffs in the Underlying Lawsuits.

37.     GAIC is entitled to a judicial declaration that the Policy issued to WHR/Lavish Lounge does not provide coverage for the allegations raised in the Underlying Lawsuits and the injuries sustained by the claimants. Therefore, GAIC has no duty to defend or indemnify any insured in connection with the claims or the Underlying Lawsuits.

## FOR A FIRST CAUSE OF ACTION
### (Declaration of No Coverage Under the Policy's Insuring Agreements)

38.     GAIC incorporates as if fully stated herein, the allegations contained in paragraphs 1-37 above.

39.     The insuring agreements in the Policy provide, in relevant part, as follows:

**SECTION I – COVERAGES**

**Coverage A – Bodily Injury and Property Damage**

**1.      Insuring Agreement**

    **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

    . . .

40.     An endorsement to the policy entitled "Limitation of Coverage to Designated Premises, Project or Operation" changes subsection b. of the Coverage A insuring agreement in the base form. The endorsement does not name any premises on the schedule and identifies the project or operation as those identified on the certificate. There are no projects listed on the certificate. The business is described on the certificate is "bartending, concessions."

41.    The endorsement replaces subsection b. of the Coverage A insuring agreement, and provides, in relevant part, as follows:

 **b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage" only if:

  **(1)** The "bodily injury" or "property damage":

   **(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

   **(b)** Arises out of the project or operation shown in the Schedule.

  **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

  . . .

42.    The insuring agreement for Coverage B of the policy provides as follows:

**SECTION I – COVERAGES**

**Coverage B – Personal and Advertising Injury**

**1.** **Insuring Agreement**

 **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

43.    As was the case with Coverage A, the "Limitation of Coverage to Designated Premises, Project or Operation" endorsement changes subsection b. of the Coverage B insuring agreement in the base form. The endorsement does not identify any premises on the schedule and identifies the project or operation as those identified on the certificate. There are no projects

listed on the certificate. The business is described on the certificate is "bartending and concessions."

44.     The endorsement provides in relevant part as follows:

> **b.**     This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:
>
> > **(1)**     The offense arises out of your business:
> >
> > > **(a)**     Performed on the premises shown in the Schedule; or
> > >
> > > **(b)**     In connection with the project or operation shown in the Schedule; and
> >
> > **(2)**     The offense was committed during the policy period.
>
> . . .

45.     Under both Coverage A and B, coverage is only provided for claims for bodily injury and/or personal injury arising out of an occurrence or offense that arises out of the bartending/concessions operations identified on the certificate.

46.     No coverage is provided under the Policy because the bodily injuries sustained by the claimants and the plaintiffs in the Underlying Lawsuits arose out of nightclub operations. They did not arise out of an occurrence or offense arising out of bartending/concession operations.

47.     In addition, there is no coverage for the claims in the Young Lawsuit and the Goldsmith Lawsuit for violations of the S.C. Unfair Trade Practices Act because the conduct giving rise to those claims is alleged to be intentional. It does not constitute an occurrence under Coverage A and it is not an enumerated offense under Coverage B of the Policy.

48.     Therefore, GAIC is entitled to a declaration that it has no duty to defend or indemnify Lavish Lounge, Quiroga or any other insured under the Policy for the claims made by Williams and Hudson and by the plaintiffs in the Underlying Lawsuits.

**FOR A SECOND CAUSE OF ACTION**
**(Declaration that "Assault and Battery Exclusion"**
**Endorsement Excludes Coverage)**

49.    GAIC incorporates as if fully stated herein, the allegations contained in paragraphs 1-48 above.

50.    The Policy contains an "Assault and Battery Exclusion" endorsement which provides as follows:

**ASSAULT AND BATTERY EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising from, based on or caused by:

**1.**    assault and/or battery committed by any person;

**2.**    the failure of any person to suppress or prevent any assault or battery, or any act or omission in connection with the prevention or suppression of any Assault and or Battery; or

**3.**    the negligent hiring, placement, supervision, employment or training of any employee or agent of the insured with respect to the events described in 1. or 2. above.

**This exclusion does not change any other provision of the Policy.**

\*\*\*

51.    Upon information and belief, an altercation broke out on or near the stage at the Foogiano concert held at Lavish Lounge in the early morning hours of July 5, 2020, and, thereafter, the shooting(s) occurred.

52.    Upon information and belief, Cooper, an attendee at the concert at Lavish Lounge, has been arrested and charged with two counts of murder, including the murder of Mykala Bell, and seven counts of attempted murder.

53.     Upon information and belief, the injuries sustained by Williams, Hudson and the plaintiffs in the Underlying Lawsuits arose from, were based on, or caused by an assault and/or battery by an individual or individuals present at Lavish Lounge on July 4-5, 2020.

54.     Upon information and belief, the injuries sustained by Williams, Hudson and the plaintiffs in the Underlying Lawsuits arose from, were based on, or caused by the failure of any person to suppress or prevent any assault or battery, or any act or omission in connection with the prevention or suppression of any Assault and or Battery; or the negligent hiring, placement, supervision, employment or training of any employee or agent of the insured with respect to an assault and/or battery or the failure to suppress or prevent an assault and/or battery.

55.     Therefore, the assault and battery exclusion operates to exclude coverage under the Policy and GAIC has no duty to defend or indemnify Lavish Lounge, Quiroga or any other insured under the Policy for the claims made by the claimants and by the plaintiffs in the Underlying Lawsuits.

### FOR A THIRD CAUSE OF ACTION
### (Declaration that the "Exclusion – Designated Ongoing Operations" Excludes Coverage Under Coverage A)

56.     GAIC incorporates as if fully stated herein the allegations contained in paragraphs 1-55 above.

57.     The Policy contains an exclusion entitled "Designated Ongoing Operations" which provides as follows:

### SCHEDULE

**Description of Designated Ongoing Operations**

Operations not in compliance with County, State and Federal Food and Safety Regulations

. . .

Restaurant, Café', Bakery, Tavern, or similar establishment, owned or operated by the insured

**Specified Location (If Applicable)**

None.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to Paragraph **2., Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):**

This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If the specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location."

For the purpose of this endorsement, "Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street roadway waterway or right- of-way of a railroad.

58.     The claimants and the plaintiffs allege that their bodily injuries arose when they were attending a concert at Lavish Lounge, which was operated as a nightclub on the date in question.

59.     Under this exclusion, coverage is excluded for bodily injuries arising out of the insured's operation of a tavern "or similar establishment owned or operated by the insured."  A nightclub is an establishment similar to a tavern.

60.     In addition, coverage is excluded for operations conducted in violation of local, state and/or federal food and safety regulations.

61.    Upon information and belief, on the night of the incident, because of concerns about COVID-19 and in an effort to protect the public from exposure to COVID-19, the Centers for Disease Control, the State of South Carolina and/or local government had in effect guidelines and orders prohibiting the operation of nightclubs and other establishments and limiting the capacity at establishments that were allowed to be open to the public.

62.    On the date at issue, Lavish Lounge was not permitted to be open for business and was in violation of capacity restrictions and social distancing guidelines put in place for the safety of the public. Therefore, coverage is excluded under Coverage A of the Policy because the operations of Lavish Lounge were in violation of county, state, and/or federal food and safety regulations.

63.    In addition Young and Goldsmith allege that Lavish Lounge's operation did not comply with the Alcoholic Beverages Control Act.

64.    Therefore, GAIC has no duty to defend or indemnify Lavish Lounge, Quiroga or any other insured under Coverage A of the Policy for the claims made by the claimants and by the plaintiffs in the Underlying Lawsuits because coverage is excluded under the Designated Ongoing Operations exclusion.

### FOR A FOURTH CAUSE OF ACTION
### (Declaration that the Expected or Intended Injury Exclusion Excludes Coverage Under Coverage A)

65.    GAIC incorporates as if fully stated herein, the allegations contained in the paragraphs 1-64 above.

66.    Section I - Coverages, paragraph 2. Exclusions of Coverage A Bodily Injury and Property Damage Liability of the Policy contains the following expected or intended injury exclusion:

This insurance does not apply to:

a.    Expected or intended injury

"Bodily injury' or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

67.    To the extent that the bodily injuries sustained by the claimants and the plaintiffs in the Underlying Lawsuits were expected or intended by the insureds, there is no coverage under Coverage A of the Policy and GAIC has no duty to defend or indemnify Lavish Lounge, Quiroga or any other insured under Coverage A.

## FOR A FIFTH CAUSE OF ACTION
### (Declaration that the Liquor Liability Exclusion
### Excludes Coverage under Coverage A)

68.    GAIC incorporates as if fully stated herein, the allegations contained in the paragraphs 1-67 above.

69.    Section I—Coverages, paragraph 2. Exclusions of Coverage A Bodily Injury and Property Damage Liability of the Policy contains the following liquor liability exclusion:

**2.**    Exclusions

This insurance does not apply to:

**c.    Liquor Liability**

"Bodily injury or "property damage" for which any insured may be held liable by reason of:

(1)    causing or contributing to the intoxication of any person;

(2)    the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3)    any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

(a)     the supervision, hiring, employment, training or monitoring of others by that insured; or

(b)     providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage," involved that which is described in paragraph (1), (2) or (3) above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

70.     In the Underlying Lawsuits, Young and Goldsmith allege that the defendants engaged in the sale of alcohol to underage persons and without a permit or license. To the extent that their bodily injuries, or the bodily injuries of the other claimants' or plaintiffs' in the Underlying Lawsuits, are the result of an occurrence involving any insured(s) causing or contributing to the intoxication of any person or any other conduct designated under the liquor liability exclusion, coverage is excluded under the Policy.

71.     Therefore, GAIC has no duty to defend or indemnify Lavish Lounge, Quiroga or any other insured under Coverage A of the Policy.

**FOR A SIXTH CAUSE OF ACTION**
**(Declaration that Personal and Advertising Injury Exclusion**
**Excludes Coverage Under Coverage A)**

72.     GAIC incorporates as if fully stated herein, the allegations contained in the paragraphs 1-71 above.

73.     Section I - Coverages, paragraph 2. Exclusions of Coverage A Bodily Injury and Property Damage Liability of the Policy contains the following personal and advertising injury exclusion:

> **2.**     Exclusions
>
> This insurance does not apply to:
>
> **o.     Personal and Advertising Injury**
>
> "Bodily injury" arising out of "personal and advertising injury."

74.     The Estate alleges that the bodily injuries sustained by Ms. Bell were the result of false imprisonment, an enumerated offense under "personal and advertising injury" as defined in the Policy.

75.     Therefore, coverage is excluded under Coverage A of the Policy for bodily injury arising out of false imprisonment or any other claim made by any other claimant or plaintiff in the Underlying Lawsuits that constitutes an enumerated offense under "personal and advertising injury," and GAIC has no duty to defend or indemnify Lavish Lounge, Quiroga or any other insured under Coverage A of the Policy.

### FOR A SEVENTH CAUSE OF ACTION
**(Declaration that the Exclusions for "Claim or Suit Alleging Violation of Laws Concerning Unfair Competition or Similar Laws" and "Claim or Suit Alleging Infringement of Intellectual Property or Violation of Laws Concerning Unfair Competition or Similar Laws" Exclude Coverage Under Coverages A and B)**

76.     GAIC incorporates as if fully stated herein, the allegations contained in the paragraphs 1- 75 above.

77.     The Policy contains an endorsement entitled "Exclusion of Claims and Suits Alleging Infringement of Intellectual Property or Unfair Competition" that excludes coverage for

claims or suits that allege violation of laws concerning unfair trade practices or similar laws unde

Coverage A and B of the Policy.

78.    The endorsement adds the following exclusion with respect to Coverage B:

> The following exclusion is added to **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I - COVERAGES, Coverage B - Personal and Advertising Injury Liability, 2.Exclusions:**
>
> **Claim or Suit Alleging Violation of Laws Concerning Unfair Competition or Similar Laws**
>
> **1.**    Any claim or "suit" that alleges "personal and advertising injury" arising out of any actual, alleged, or threatened violation of any statutes, common law, or other laws or regulations concerning unfair competition, antitrust, restraint of trade, piracy, unfair trade practices, or any similar laws or regulations.
>
> **2.**    Any "personal and advertising injury" alleged in a claim or "suit" that also alleges any actual, alleged, or threatened violation of any statutes, common law, or other laws or regulations concerning unfair competition, antitrust, restraint of trade, piracy, unfair trade practices, or any similar laws or regulations.

This exclusion applies to our duty to defend and our duty to pay damages whether such

misappropriation, infringement, or violation is committed in your "advertisement" or otherwise.

79.    The endorsement also adds the following exclusion with respect to Coverage A:

C.    The following exclusion is added **to COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I – COVERAGES, Coverage A – Bodily Injury and Property Damage Liability, 2, Exclusions:**

> **Claim or Suit Alleging Infringement of Intellectual Property or Violation of Laws Concerning Unfair Competition or Similar Laws**
>
> Any "bodily injury" or "property damage" alleged in any claim or "suit" that also alleges any:
>
> . . .
>
> **2.**    violation of any statute, common law, or other laws or regulations described in **COMMERCIAL GENERAL LIABILITY**

**COVERAGE FORM, SECTION I - COVERAGES, Coverage B – Personal and Advertising Injury, 2. Exclusions, Claim or Suit Alleging Violation of Laws Concerning Unfair Competition or Similar Laws.**

80.     Young and Goldsmith allege violations of the South Carolina Unfair Trade Practices Act. Under the above exclusion, there is no coverage under Coverage A for bodily injury alleged in a suit that also alleges violation of unfair trade practices. Likewise, to the extent that Young and Goldsmith allege personal and advertising injury that arises out of unfair trade practices, coverage is excluded under Coverage B. In addition, there is no coverage under Coverage B for personal or advertising injury alleged in any suit that also alleges violation of unfair trade practices.

81.     Therefore, GAIC has no duty to defend or indemnify Lavish Lounge, Quiroga or any other insured under Coverage A or B of the Policy because there are allegations of violations of the South Carolina Unfair Trade Practices Act.

**FOR AN EIGHTH CAUSE OF ACTION**
**(Declaration that the Exclusion for Knowing Violation of Rights of Another Excludes Coverage Under Coverage B)**

82.     GAIC incorporates as if fully stated herein, the allegations contained in the paragraphs 1 - 81 above.

83.     Coverage B of the Policy includes an exclusion for knowing violation of the rights of another. The exclusion provides as follows:

**2.      Exclusions**

This insurance does not apply to:

**a.      Knowing Violation of Rights of Another**

"Personal and advertising injury caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

20

84.     Kotz alleges that after the altercation took place, Bell "tried to escape but was unlawfully restrained . . . detained inside the club for a period of time against [her] will and personal liberty. Mykala was falsely imprisoned and as a result, was caught in the crossfire, shot and killed." False imprisonment is an enumerated offense in the definition of personal and advertising injury.

85.     To the extent that it is determined that Lavish Lounge, Quiroga or any other insured caused personal and advertising injury – false imprisonment or any other enumerated offense - with the knowledge that the personal and advertising injury would violate the rights of Ms. Bell, or any other claimant or plaintiff in the Underlying Lawsuits, the exclusion will operate to exclude coverage and GAIC will have no duty to defend or indemnify Lavish Lounge, Quiroga or any other insured under Coverage B of the Policy.

## FOR A NINTH CAUSE OF ACTION
### (Declaration that the Exclusion for Criminal Acts Excludes Coverage Under Coverage B)

86.     GAIC incorporates as if fully stated herein, the allegations contained in the paragraphs 1 - 85 above.

87.     Coverage B of the Policy includes an exclusion for criminal acts. The exclusion provides as follows:

**2.      Exclusions**

This insurance does not apply to:

**d.      Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

88.     To the extent that personal and advertising injury – false imprisonment or any other enumerated offense – sustained by the claimants or the plaintiffs in the Underlying Lawsuits arose out of a criminal act committed by or at the direction of any insured, this exclusion will operate to exclude coverage, and GAIC will have no duty to defend or indemnify Lavish Lounge, Quiroga or any other insured under Coverage B of the Policy.

**WHEREFORE,** GAIC prays for the following relief:

a.     For a judicial declaration that there is no coverage under the Policy because the claims for bodily injury and personal injury do not arise out of an occurrence or offense that arises out of the bartending/concessions operations identified on the certificate;

b.     For a judicial declaration that there is no coverage under the Policy because the assault and battery exclusion excludes coverage for Lavish Lounge, Quiroga or any other insured under the Policy for the claims made by the claimants and by the plaintiffs in the Underlying Lawsuits;

c.     For a judicial declaration that the **"Exclusion – Designated Ongoing Operations"** Endorsement Excludes Coverage under Coverage A of the Policy;

d.     For a judicial declaration that the expected or intended injury exclusion excludes coverage under Coverage A of the Policy;

e.     For a judicial declaration that the liquor liability exclusion excludes coverage under Coverage A of the Policy;

f.     For a judicial declaration that the personal and advertising injury exclusion excludes coverage under Coverage A of the Policy;

g.     For a judicial declaration that the exclusions added by endorsement for "Claim or

Suit Alleging Violation of Laws Concerning Unfair Competition or Similar Laws" and "Claim or Suit Alleging Infringement of Intellectual Property or Violation of Laws Concerning Unfair Competition or Similar Laws" exclude coverage under Coverage B and Coverage A of the Policy;

h.    For a judicial declaration that the knowing violation of rights of another exclusion excludes coverage for the claims for personal and advertising injury under Coverage B of the Policy;

i.    For a judicial declaration that the criminal acts exclusion excludes coverage for the claims for personal and advertising injury under Coverage B of the Policy;

j.    For a judicial declaration that GAIC has no duty to defend or indemnify Lavish Lounge, Quiroga or any other insured for the claims made by the claimants and the plaintiffs in the Underlying Lawsuits under the Policy;

k.    GAIC prays that the Court award the costs of the action and any such other and further relief as this Court shall deem just and proper.

Respectfully submitted,

s/ Jennifer E. Johnsen
Jennifer E. Johnsen (Federal ID # 5427)
GALLIVAN, WHITE & BOYD, P.A.
Post Office Box 10589
Greenville, South Carolina 29603
(864) 271-9580

Attorneys for Plaintiff,
Great American Alliance Insurance Company